1  OLIVA & ASSOCIATES ALC
   Joseph L. Oliva, Esq., State Bar No. 113889
2  11770 Bernardo Plaza Court, Suite 350
   San Diego, California 92128
3  Telephone: (858) 385-0491
   Facsimile: (858) 385-0499
4

5  Attorney for Defendant,
   DEPENDABLE SHEET METAL
6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10  FAIRMONT SPECIALTY INSURANCE          CASE NO.: C07-03421 VRW
    COMPANY, a Delaware corporation; and
11  TIG INSURANCE COMPANY, a California
    corporation,                          DECLARATION OF JAYNE LOUGHRY
12                                         IN SUPPORT OF DEPENDABLE SHEET
                                           METAL'S MOTION TO REMAND THE
13             Plaintiffs,                 ENTIRE ACTION BACK TO THE
    v.                                     SUPERIOR COURT OF THE STATE OF
14                                         CALIFORNIA, CONTRA COSTA
    INSURANCE CORPORATION OF NEW           DISTRICT
15  YORK, a New York corporation;
    DEPENDABLE SHEET METAL, a              Date:    September 6, 2007
16  California corporation; and DOES 1 through   Time:    2:00 p.m.
    10,                                    Dept.:   Courtroom 6, 17th Floor
17                                         Judge:   The Hon. Vaughn R. Walker
               Defendants.
18  _____

19       I, Jayne Loughry, declare as follows:

20       1.    I am an attorney licensed by the State of California and have and continue to be

21  retained by Dependable Sheet Metal ("Dependable") to serve as personal counsel regarding

22  certain insurance and litigation matters. I am also admitted to practice before the United

23  States District Court for the Northern District of California. I make this declaration in support

24  of Dependable's Motion to Remand the Entire Action Back to the Superior Court of the State

25  of California, Contra Costa District. Unless stated to be upon information and belief, I have

26  personal knowledge of the facts set forth herein, and if called as a witness, am competent to

27  testify to the truth thereof.

28  ///

2.     Dependable is a small sheet metal and heating and air ventilation subcontractor located in Dixon, California. Over at least the past twenty years, it has worked exclusively on residential housing projects in Contra Costa and other counties in Northern California. As is common to developers, contractors, and subcontractors in residential construction, over the years, Dependable has been brought into scores of lawsuits, by complaint or cross-complaint, in which homeowners allege various construction defects. In the past five years, Dependable has been among those sued in some forty different construction defect lawsuits, all of which were brought in California state courts and the majority of which were brought in the Contra Costa County division of the California Superior Court.

3.     In California, homeowners have a ten-year statute of limitations in which to make claims for construction defects. Accordingly, over the years, Dependable annually purchased liability insurance policies which it understood provided completed operations coverage which would protect Dependable against claims regarding past projects where property damage arising from Dependable's completed work was sustained during the effective dates of the policy. Dependable bought such insurance policies from, among others, Plaintiffs TIG Insurance Company ("TIG"), Ranger Insurance Company (now known as Fairmont Specialty Insurance Company, but herein referred to as "Ranger"), and Co-Defendant, Insurance Corporation of New York ("INSCORP"). Between August 9, 1993 and December 1, 2001, all of Dependable's commercial liability insurance was provided continuously and without gaps or disruption by these three insurers. As such, and because of California's ten-year statute of limitations for residential construction defect claims, the various policies issued by these three insurers have been, and some will continue to be for several more years, Dependable's main, if not sole, protection against past, present, and future construction defect claims for property damage sustained at each construction project. Dependable, by purchasing insurance, did not expect any gap in covered since it never failed to purchase insurance when its policies expired.

///

///

1    4.    Over the years, when Dependable became aware of a claim or potential claim, it

2    tendered the claim to all insurers, including TIG, Ranger, and INSCORP.  For several years

3    and concerning numerous claims, these insurers routinely accepted tender and provided

4    defense and indemnity to Dependable.  Dependable was not made aware of, nor had any

5    knowledge of, how the insurers were allocating responsibility among themselves.

6    5.    Within about the past two years, however, INSCORP began what appeared to be

7    routinely denying it had any coverage obligations regarding claims tendered by Dependable.

8    In late 2006, a representative for TIG and Ranger advised Dependable that INSCORP's

9    practice of denying coverage was wrong and would soon cause serious problems for

10   Dependable.

11   6.    In January 2007, I was retained by Dependable for the purpose of investigating

12   and assessing Dependable's liability insurance coverage, especially regarding the positions

13   being taken by TIG, Ranger, and INSCORP.  Further, I was retained to help Dependable

14   obtain the rights and benefits owed under these various policies – past, present and in the

15   future.  In the course of my retention, I have reviewed all of Dependable's liability insurance

16   policies and related documents and correspondence; monitored the status of pending

17   underlying claims; frequently conferred and corresponded with the insurers' various

18   representatives as well as the various counsel assigned to defend Dependable; participated in

19   various proceedings related to certain of the underlying claims; and assisted Dependable in

20   retaining counsel to defend against claims as to which all the insurers have denied coverage.

21   7.    I am informed and believe that, at all relevant times, the Riverstone Group

22   ("Riverstone") has served as claims-adjustor for both Plaintiffs TIG and Ranger and were

23   authorized to speak on behalf of both Plaintiffs.  On many occasions over the past six months,

24   I spoke and corresponded with Riverstone Claims Adjustor Elizabeth del Rosario and/or her

25   supervisor, Sherrianne Hanavan.  I also had an opportunity to meet Ms. del Rosario, as well as

26   plaintiffs' coverage counsel in the instant action, at various Contra Costa County Court and

27   other proceedings concerning various underlying claims.  At all times, the individuals named

28   have acted with civility and courteousness.    Nevertheless, Dependable in no way considers

1  itself aligned with Plaintiffs. I have repeatedly and continuously advised the representatives
2  of TIG and Ranger that Dependable believes that various positions and actions taken by these
3  two insurers were wrong under the law of California and, further, that some were so wrong as
4  to be considered breaches of the covenant of good faith and fair dealing owed to Dependable.
5  Despite the civility with which all have conducted themselves, the fact that there was and is an
6  adversarial relationship between Defendant Dependable and Plaintiffs TIG and Ranger
7  regarding a number of issues has always been openly acknowledged. Below, I will identify
8  some of the major of these adversarial issues.

9      8.    On several occasions, Ms. del Rosario and/or Ms. Hanavan directly, and through
10 assigned defense counsel, asserted that INSCORP was wrongfully refusing to participate in
11 funding settlement of underlying claims, that TIG and/or Ranger refused to pay what it
12 deemed to be INSCORP's rightful share of a settlement amount, and that, therefore,
13 Dependable itself should pay INSCORP's settlement share in order to avoid trial and potential
14 greater harm. I consistently responded that Dependable believed this was an allocation
15 dispute among insurers, that the insurers had other remedies for resolving allocation disputes,
16 that Dependable was not obligated to step into the shoes of a recalcitrant insurer and,
17 moreover, that it was arguably bad faith for one insurer to attempt to make a policyholder pay
18 the settlement share of a recalcitrant insurer. Defendant Dependable and Plaintiffs herein are
19 adverse on this issue.

20     9.    Throughout attempts to settle various lawsuits, the representatives of TIG and
21 Ranger consistently asserted that their insurers were at most required to fund only a fraction of
22 any settlement because of when they had determined the completed operations, coverage had
23 commenced for the work performed by Dependable at the subject construction projects. They
24 referred to this determination as their "time on risk analysis" and indicated it was based on the
25 filing of official Notices of Completion ("NOC"). I consistently stated Dependable's contrary
26 views that: 1) while a "time on risk analysis" might be appropriate to determine allocation
27 between or among insurers, it was wholly inappropriate to force a policyholder to pay the
28 settlement share of a recalcitrant insurer; and, furthermore, 2) their method of determination

1   was flawed as applied to Dependable because it commences completed operations coverage at

2   the last possible date whereas, under the policies issued, such coverage commences at the

3   *earliest* of three possible dates including the date upon which Dependable completed work

4   under its contract date, a date earlier than the Notice of Completion. Nevertheless, TIG and

5   Ranger persisted in refusing to pay indemnity or contribute to any settlement in any amount

6   greater than the percentage derived from their NOC determination. Defendant Dependable

7   and Plaintiffs herein are adverse on this issue.

8          10.     In one of these lawsuits, *Kaiser, et al. v. KB Homes, et al.,* ("Kaiser"), all other

9   defendants and cross-defendants had settled with plaintiffs, leaving Dependable the only

10  remaining party. After much negotiation, Plaintiffs had reduced their settlement demand

11  against Dependable to slightly less than $50,000, an amount which defense counsel, assigned

12  by Riverstone, recommended as reasonable. TIG, Ranger, and INSCORP each refused to

13  contribute amounts sufficient to fund a settlement. I attended several proceedings at the

14  Contra Costa County Court aimed at getting the insurers to fund a settlement and, thereby,

15  avoid a trial in which Dependable would be the sole defendant and at risk of greater direct and

16  indirect harm. Nevertheless, the TIG and Ranger representatives persistently refused to pay

17  more than 14% of any settlement amount, asserting that – based on their "time on risk"

18  analysis – the remaining 86% of any settlement should be paid by INSCORP. Despite

19  numerous and strenuous efforts, none of the insurers would budge. On the day which trial was

20  to commence, Dependable recognized that it had only one means of saving itself from trial

21  and the greater harm that would likely be imposed at trial. Reluctantly, Dependable itself

22  agreed to pay the full settlement amount to plaintiffs. At the hearing in which the settlement

23  was recorded, Dependable made clear that it was agreeing to settle solely to avoid the

24  imminent risk of trial which was, in turn, caused solely by the insurers' failure to resolve their

25  allocation dispute in a proper manner and their failure to fund the settlement amount.

26  Dependable also clearly stated that by entering into the settlement with plaintiffs, Dependable

27  was not making a voluntary payment or otherwise breaching any duty of cooperation under its

28  various insurance policies nor was it waiving any rights against its insurers for their failure to

1  settle the *Kaiser* lawsuit. Counsel for TIG, Ranger and INSCORP were all present at this
2  hearing and all consented to the settlement.

3      11.    Attached hereto as Exhibit A to this Declaration is a true and correct copy of the
4  April 23, 2007 Reporter's Transcript of the Proceedings concerning the *Kaiser* settlement.

5      12.    Attached hereto as Exhibit B to this Declaration is a true and correct copy of the
6  executed Promissory Note by which Dependable settled the *Kaiser* lawsuit.

7      13.    Less than two months later, Dependable was again caught in the middle of the
8  insurers' allocation dispute. The lawsuit was entitled, *Edwards, et al. v. Suncrest Homes at*
9  *Dallas Ranch LP, et al.* ("*Edwards*") and, like *Kaiser*, the lawsuit had been brought in the
10 Contra Costa County Superior Court, all other parties had settled with plaintiffs, and trial was
11 set to commence shortly. In *Edwards*, plaintiffs eventually lowered their settlement demand
12 to just $20,000, an amount deemed reasonable by defense counsel as well as the expert
13 witness retained by defense counsel. Nevertheless, again TIG, Ranger, and INSCORP all
14 refused to pay amounts sufficient to settle the *Edwards* lawsuit. INSCORP refused to offer
15 any amount and TIG and Ranger refused to pay more than $150.00 toward settlement. Again,
16 TIG and Ranger asserted that, according to their "time on risk analysis," INSCORP was
17 responsible for paying the remainder of any settlement amount. At my request, defense
18 counsel and Dependable's coverage counsel made numerous but unsuccessful efforts
19 imploring the insurers to remove Dependable from harm's way by settling the *Edwards*
20 lawsuit. By the insurers' failure to respond to these efforts, as well as the conduct and
21 comments of defense counsel retained by Riverstone, I came to believe that the insurers
22 thought that Dependable would, as it had in *Kaiser*, extricate itself from the *Edwards*
23 litigation, despite the fact that I had repeatedly stated to all concerned that Dependable would
24 not again step in to settle lawsuits.

25     14.    As such, I believed that Dependable would have no choice but to let the
26 *Edwards* matter proceed to trial, which was scheduled to commence within a week. I then
27 began attempting to learn more about the underlying *Edwards* claims and defense counsel's
28 trial strategy. Defense counsel, assigned by Riverstone, repeatedly assured me that they were

1    prepared for trial, but after extended discussions with counsel and a meeting with the expert

2    witness retained by defense counsel, I became gravely concerned that Dependable's defense

3    was not prepared for trial and that if the case were to go to trial, Dependable would near

4    certainly face an adverse judgment in an amount at least five-fold greater than plaintiffs'

5    settlement demand.    At my request, Dependable's coverage counsel communicated my

6    concerns to the representatives and counsel for TIG, Ranger, and INSCORP, essentially

7    begging that they settle the *Edwards* case before the deadline plaintiffs had set for acceptance

8    of their $20,000 demand.  None of the insurers responded in any way.

9        15.    As such, believing that it had been effectively abandoned by its insurers and was

10   unprepared for trial, Dependable concluded it had no choice but to attempt to settle the

11   *Edwards* lawsuit itself.    I negotiated such a settlement directly with plaintiffs' counsel,

12   whereby Dependable agreed that it would pay plaintiffs $20,000 on the conditions that none of

13   its insurers objected to the settlement and that the Contra Costa County Court agreed to hold a

14   hearing on the settlement.  After such a hearing was scheduled, I wrote to the representatives

15   and counsel of TIG, Ranger, and INSCORP notifying them of the proposed settlement and the

16   scheduled hearing, and further advising them that Dependable had been compelled to enter

17   into the settlement by their egregious conduct and, as such, Dependable was not making a

18   voluntary payment or otherwise breaching any duty of cooperation under its various insurance

19   policies nor was it waiving any rights against its insurers for their failure to settle the *Edwards*

20   lawsuit. (Attached hereto as Exhibit C to this Declaration is a true and correct copy of my

21   letter of June 15, 2007.) A hearing on the settlement was held on June 19, 2007, the day trial

22   was set to commence. Counsel for TIG and Ranger appeared, but despite notification, no one

23   for INSCORP appeared at the hearing.  Appearing on behalf of Dependable, I detailed the

24   circumstances and conditions of the settlement for the Court and made clear that Dependable

25   reserved all rights against its insurers, including TIG and Ranger.  Counsel for TIG and

26   Ranger consented to the settlement.  The Court found that the settlement was reasonable and

27   that there was no objection to it.

28   ///

16.    Attached hereto as Exhibit D to this Declaration is a true and correct copy of the executed Promissory Note by which Dependable settled the *Edwards* lawsuit. (The Reporter's Transcript of these proceedings has been ordered, but not yet received. I will supplement my declaration to include a true and correct copy of the Transcript if it is received before hearing Dependable's Motion to Remand.)

17.    As to the matters stated in paragraphs 10-15 above, Dependable believes that TIG and Ranger failed to honor their contractual and legal obligations to Dependable and that, as a consequence of TIG and Ranger's conduct, Dependable has been and continues to be harmed. Defendant Dependable and Plaintiffs herein are adverse on these issues.

18.    Prior to INSCORP's adoption of a routine practice of denying claims against Dependable as to various lawsuits, TIG, Ranger, and INSCORP jointly participated in the defense and indemnification of Dependable in numerous construction defect lawsuits. Neither I nor Dependable have any present knowledge as to the manner or process by which these insurers determined their respective allocations. However, I am informed and believe that, contrary to California law, these insurers charged Dependable multiple and, therefore, excessive deductible payments. I have previously informed Riverstone's Sherrianne Hanavan of Dependable's belief that it was overcharged by TIG and Ranger. Further, in the instant lawsuit, Dependable intends to seek recovery of any and all amounts improperly charged by and paid to the insurers, including TIG and Ranger. Defendant Dependable and Plaintiffs herein are adverse on this issue.

19.    Most recently in the *Belsky, et. al. v. Presley Companies, et al.* ("Belsky") matter, Dependable believes that TIG and Ranger have improperly charged multiple deductibles. The *Belsky* case, like *Kaiser* and *Edwards*, had a Spring 2007 trial date looming in the Contra Costa County Superior Court. As with *Kaiser* and *Edwards*, TIG and Ranger persistently asserted that they were not obligated to fund the full amount of any settlement. In fact, on several occasions, Riverstone's Elizabeth del Rosario and Sherrianne Hanavan told me that, since INSCORP was not willing to participate in funding a *Belsky* settlement, Dependable would have to pay INSCORP's settlement share or, in the alternative, be the only

1  defendant at trial. When I responded that I believed that TIG's and Ranger's remedy was to

2  pursue INSCORP themselves, Ms. Hanavan told me the amount involved was not worth

3  pursuing INSCORP but nevertheless continued to insist that Dependable itself should pay

4  what TIG and Ranger said was INSCORP's share. Eventually, TIG and Ranger decided to

5  settle the *Belsky* lawsuit on their own. I am informed and believed that they did so because I

6  had learned that Riverstone, acting on behalf of TIG and Ranger, had agreed or was thought

7  by the *Belsky* Special Master to have agreed to a $40,000 settlement demand without the prior

8  knowledge of assigned defense counsel or Dependable. Subsequently, Riverstone has sent an

9  invoice to Dependable seeking payment of deductibles under both the TIG and Ranger

10  policies. (Attached hereto as Exhibit E to this Declaration is a true and correct copy of a June

11  20, 2007 invoice from Riverstone.)  Dependable believes such charging of multiple

12  deductibles is improper under California law and intends to pursue its remedies in the instant

13  lawsuit. Defendant Dependable and Plaintiffs herein are adverse on this issue.

14

15  Executed on the 25th day of July 2007 in San Francisco, California.

16

17  Jayne Loughry

18

19

20

21

22

23

24

25

26

27

28