# EXHIBIT "A"

1

1       IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2         IN AND FOR THE COUNTY OF CONTRA COSTA

3      HONORABLE DAVID B. FLINN, JUDGE, PRESIDING

4              DEPARTMENT 6

5

6  GARY KAISER, an individual, and   )    **ORIGINAL**

7  as an INDIVIDUAL HOMEOWNER CLASS  )

8  REPRESENTATIVE, and all others    )

9  similarly situated, and ROES     )

10  1-500, inclusive,            )

11           Plaintiffs,    )  No. **C05-00991**

12        vs.             )

13  KB HOMES, a California       )

14  Corporation, dba KAUFMAN & BROAD  )

15  OF NORTHERN CA., and DOES 1-500,  )

16  inclusive,              )

17           Defendants.    )

18  _____)

19

20

21

22         REPORTER'S TRANSCRIPT OF PROCEEDINGS

23              **APRIL 23, 2007**

24        COURTHOUSE, MARTINEZ, CALIFORNIA

25

26

27             EXHIBIT ___A___

28

VALERIE S. PRINCE - CERTIFIED SHORTHAND REPORTER #7946

2

1                    A P P E A R A N C E S

2    For PLAINTIFFS:

3            **SHINNICK & RYAN**

4            BY:  LUKE P. RYAN

5            1810 State Street

6            San Diego, California 92101

7

8    For DEPENDABLE SHEET METAL:

9            **KOLETSKY, MANCINI, FELDMAN & MORROW**

10           BY:  PETER K. PRITCHARD

11           3460 Wilshire Boulevard, Eighth Floor

12           Los Angeles, California 90010

13           **LAW OFFICES OF JAYNE LOUGHRY**

14.          BY:  JAYNE LOUGHRY

15           Post Office Box 14008

16           San Francisco, California 94114-0008

17

18   For RANGER INSURANCE:

19           **YARON & ASSOCIATES**

20           BY:  GEORGE D. YARON JR.

21           601 California Street, 21st Floor

22           San Francisco, California 94108

23

24   For INSURANCE CORPORATION OF NEW YORK:

25           **CHARLSTON, REVICH & CHAMBERLIN**

26           BY:  ROSALINDA V. AMASH

27           1925 Century Park East, Suite 1250

28           *Los Angeles, California 90067-2746*

*VALERIE S. PRINCE - CERTIFIED SHORTHAND REPORTER #7946*

3

1    APRIL 23, 2007                                    11:15 a.m.

2                          ---oOo---

3                    P R O C E E D I N G S

4         THE COURT:  Let's call the matter of Kaiser versus

5    KB Homes and get appearances first for the trial counsel.

6         MR. RYAN:  Good morning, your Honor, Luke Ryan from

7    Shinnick & Ryan on behalf of plaintiffs.

8         MR. PRITCHARD:  Peter Pritchard on behalf of

9    Dependable Sheet Metal.

10        THE COURT:  Okay.  And then we have representing the

11   carriers that have been involved in this matter?

12        MR. YARON:  Yes, your Honor.  Good morning, George

13   Yaron, Y-A-R-O-N, of Yaron & Associates.  I'm coverage counsel

14   for Ranger Insurance, which is the insurer who has been

15   defending Dependable Sheet Metal.

16        MS. AMASH:  Rosalinda Amash on behalf of Insurance

17   Corporation of New York.  A-M-A-S-H.

18        THE CLERK:  Thank you.

19        THE COURT:  And for Dependable?

20        MS. LOUGHRY:  Jayne Loughry, L-O-U-G-H-R-Y, personal

21   counsel for Dependable.

22        THE COURT:  Okay.  Now, in terms of the litigation,

23   it's my understanding that we have reached a settlement

24   agreement this morning that Dependable's liability claim will

25   be settled for a total of $54,990, and that works out, because

26   there are 78 homes, to $705 per home.

27        MR. RYAN:  That's correct, your Honor.  Luke Ryan

28   for plaintiffs.  That's correct.

*VALERIE S. PRINCE – CERTIFIED SHORTHAND REPORTER #7946*

4

1          MR. PRITCHARD:  That's correct, your Honor.

2          THE COURT:  And the settlement, as I understand it,

3     is that Dependable will pay $7,050 in cash.

4          MR. PRITCHARD:  No, your Honor, that's -- Dependable

5     has agreed to issue plaintiff a promissory note in the amount

6     of that figure, 54.

7          MR. RYAN:  54.

8          THE COURT:  I thought we just had a change.

9          MR. RYAN:  There has been.

10         MR. YARON:  If I may interject one point.  Ranger

11    Insurance, who is the defending insurer, as we discussed in

12    chambers was of the view that since 68 of the 78 homes were

13    not even built till after its policy period thereby only

14    leaving 10 out of 78 homes that could potentially be covered

15    in this litigation, we were willing to pay, and we are willing

16    to pay, 10/78ths of the $54,990 figure.

17         THE COURT:  But Dependable has decided to take the

18    whole promissory note and work out the insurance matter

19    separately?

20         MR. PRITCHARD:  Correct.

21         THE COURT:  Okay.  So then I spoke wrong.  The total

22    payment will be, if everybody's still okay with it, $54,990 so

23    that in future insurance litigation or coverage litigation or

24    disputes we have the round number of $705 per house without

25    the -- I think it was $0.18, if that works out for everybody.

26         MR. PRITCHARD:  Yes, your Honor.

27         MR. RYAN:  That works out for plaintiffs,

28    your Honor.

5

1    THE COURT:  Okay.  So the court just needs to cover

2    for Ranger.  You concur with counsel for -- that's defending

3    the case that it's in the best interest of the insured to

4    settle this case rather than go to trial?

5    MR. YARON:  Yes.

6    THE COURT:  Counsel for Insurance Company of

7    New York as well?

8    MS. AMASH:  Yes.

9    THE COURT:  All right.  With that, the court will

10    confirm the settlement as made.

11    MR. PRITCHARD:  I would like to make a comment that

12    Dependable Sheet Metal feels like it's being forced into this

13    position inasmuch as the carriers haven't funded the

14    settlement in the amount of my recommendation.  They feel that

15    it is in their best interest to do it through a promissory

16    note rather than possibly having a judgment on their record

17    and having the possible implications such as higher insurance

18    premiums.

19    THE COURT:  I think that all the parties are aware

20    that Dependable has made it clear that it feels the insurers

21    are at fault for not having worked out and resolved the matter

22    in its entirety.  I'll leave anything else to future --

23    MR. YARON:  Just say for the record that Ranger, my

24    client, we are reserving all of our rights with respect to any

25    coverage litigation that may ensue, and I mean coverage

26    litigation in the broadest sense.

27    THE COURT:  And I take it Insurance Company of

28    New York is reserving its rights in the same fashion.

6

1          MS. AMASH:  Exactly.

2          THE COURT:  And Dependable of course.

3          MR. PRITCHARD:  Jayne, do you have anything else to

4    add?

5          MS. LOUGHRY:  No.

6          THE COURT:  Okay.

7          MR. RYAN:  I would just add that by agreement the

8    promissory note will be payable in 120 days, your Honor.

9          THE COURT:  The record will so reflect.

10         MR. RYAN:  Thank you, your Honor.

11         THE COURT:  Okay.  And does that put the -- have you

12   gotten your collections from all of the other defendants so

13   that -- or should I be setting this for a review date?

14         MR. RYAN:  I would ask for a review date for the

15   entire matter, your Honor.  This case is now resolved

16   globally.

17         THE COURT:  I understand that, right.

18         MR. RYAN:  And we certainly appreciate the court's

19   effort on that.  But we are collecting settlement money,

20   signatures from subcontractors, et cetera.  I would ask for a

21   review date perhaps in another 45 to 60 days to see how we're

22   going.

23         THE COURT:  Why don't we do this?  Why don't we set

24   a review date of June 14 at 9 o'clock?  And that will be a

25   status conference, and I'll ask plaintiffs' counsel to give

26   notice just before that to those parties that have not

27   complied in any way that they need to appear either in person

28   or by telephone for the status.

7

1        MR. RYAN:  I will, your Honor.

2        THE COURT:  My practice has been to do a first

3  conference and just get a checklist of who's doing what and

4  what they can tell us about when they expect their money to be

5  in and so forth and then after that I issue orders to show

6  cause with personal appearances required.

7        MR. RYAN:  I'll do that, your Honor.

8        THE COURT:  Okay.

9        MR. PRITCHARD:  I'll prepare the promissory note.

10        THE COURT:  Thank you, everybody.  Thanks for your

11  cooperation.

12        MR. RYAN:  Thank you, your Honor.

13        *(The matter concluded, 11:21 a.m.)*

14                       ---oOo---

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

STATE OF CALIFORNIA )

                     ) ss.

CONTRA COSTA COUNTY )

        I, VALERIE S. PRINCE, Certified Shorthand Reporter, do hereby certify that as such I took down in stenotype all of the proceedings in the within-entitled matter, GARY KAISER, et al., Plaintiffs, versus KB HOMES, et al., Defendants, Superior Court Action Number C05-00991, heard before the Honorable DAVID B. FLINN, JUDGE, on APRIL 23, 2007, and that I thereafter transcribed my stenotype notes into typewriting through computer-assisted transcription, and that the foregoing transcript constitutes a full, true, and correct transcription of the proceedings held at the aforementioned time.

        IN WITNESS WHEREOF, I have hereunto subscribed my name this day, May 29, 2007.


*Valerie Prince*

            VALERIE S. PRINCE
      Certified Shorthand Reporter #7946

EXHIBIT "B"

# PROMISSORY NOTE

For value received, in the form of a full settlement and release of all claims against Dependable Sheet Metal for allegations related to the lawsuit entitled *Kaiser v. KB Homes, et al.*, California Superior Court for the County of Contra Costa, Case No. C05-00991, Dependable Sheet Metal hereby promises to pay to the *Kaiser* Plaintiffs the sum of Forty Nine Thousand Nine Hundred Ninety Nine Dollars and Fifty Six Cents ($49,999.56) ("the Settlement Sum").

Payment on this Note shall be due in 120 days from the date of execution of this Promissory Note. There shall be no interest charged on the Settlement Sum. The Settlement Sum shall be payable to Shinnick & Ryan LLP, Westview Estates Trust Account, Tax ID No. 33-0960710.

In making this Note, Dependable Sheet Metal expressly reserves any and all rights to seek payment of the entire Settlement Sum from certain of its insurance carriers, their agents, representatives, or affiliates. As to any amount of the Settlement Sum, whole or partial, which Dependable Sheet Metal itself pays on this Note, Dependable Sheet Metal expressly reserves any and all rights to seek reimbursement or recovery of such amount from certain of its insurance carriers, their agents, representative, or affiliates.

_____          _____
Vice-President, Dependant Sheet Metal              Date Executed

EXHIBIT ___B___

EXHIBIT "C"

# JAYNE LOUGHRY Attorney at Law

*INSURANCE & RISK MANAGEMENT CONSULTING*

June 15, 2007

**VIA FACSIMILE AND E-MAIL ONLY**

Wendy Bush
Claims Supervisor
NOVAPRO RISK SOLUTIONS
PO Box 660760
Sacramento, CA 95866

Elizabeth del Rosario
Sherrianne Hanavan
RIVERSTONE CLAIMS MANAGEMENT, LLC
8880 Rio San Diego Drive, Suite 510
San Diego, CA 92108

    Re:   <u>Edwards, et al. v. Suncrest Homes at Dallas Ranch LP</u>
           *Contra Costa County Superior Court Case No. C05-00387*
           INSCORP Insured: Dependable Sheet Metal
           INSCORP Claim No.: 200-134478-118
           INSCORP Policy No.: CAIC 10016984 00-00 (8/9/1997 to 8/12/1998)
           Policy No.: CAIC100169840001 (12/1/1998 to 12/1/1999)
           Policy No.: CAIC 10016984 00 02 (12/1/1999 to 12/1/2000)
           Policy No.: CAIC 10016984 00 03 (12/1/2000 to 12/1/2001)
           RANGER Policy No.: GLO 673880 00 (8/9/1996 -8/9/1997)

Dear Ms. Bush and Ms. Del Rosario:

    As you know, I am personal counsel for Dependable Sheet Metal and I am writing you concerning recent developments in the above-referenced matter.

    Despite a trial firmly scheduled to begin in a matter of days, and despite the dire circumstances set forth in Mr. Oliva's letter of June 12, 2007, I understand that neither recipients of that letter nor any other representatives of the carriers responded to or made any attempt whatsoever to communicate with Mr. Oliva or his office. Similarly, no effort to communicate with me directly was made before or after the Wednesday 12:00pm deadline for accepting Plaintiff's $20,000 settlement demand. There was, and is, no possible conclusion other than that the carriers have effectively abandoned Dependable and left Dependable with no choice but to mitigate its liability and settle this litigation.

**EXHIBIT**   C

This is not simply a matter of leaving an insured in possible harm's way, but rather of putting the insured in the cross-hairs of a clear and present danger – a near certain calamity. The fact that the carriers have done this to Dependable solely because they could not manage to resolve their squabbling over how to allocate their funding of a $20,000 settlement demand is both ridiculous and outrageous. From the carriers' conduct, as well as information communicated by assigned defense counsel and the carriers' failure to respond to recent communications, Dependable can only conclude that, irrespective of the amount of an adverse judgment against Dependable, Inscorp will refuse to fund or satisfy any adverse judgment and Ranger, at best, will only fund or satisfy any adverse judgment in an amount proportionately exceeding the paltry $150 settlement funding it did authorize. Thus, for all intents and purposes, the carriers transferred their duty to indemnify from the policies onto the financial shoulders of their insured.

The carriers have left Dependable with no choice but to mitigate its liability and avoid a judgment in excess of $20,000. As no meaningful settlement authority was provided, and as Dependable was given no reason to believe any additional, much less sufficient, authority would be provided to protect Dependable's legal and financial interests (even though the potential scope of damages that might have been found against Dependable are in excess of $100,000, exclusive of costs and interests), Dependable has agreed to a $20,000 settlement with Plaintiffs.

Given the adamant and non-negotiable position of the carriers, this is not, and can in no way be considered, a voluntary settlement. Rather, it is a settlement that has been compelled by the conduct of the insurers and an informed assessment of the state of trial preparation and strategy, as well as the potential magnitude of damages that is likely given the state of trial preparation, defense strategy, and the imposition of liability against Dependable under express contractual indemnity provisions that would render an adverse judgment inevitable. We are also concerned that, under Civil Code section 1717, Plaintiff, as a prevailing party, could seek attorney's fees under an attorney's fees provision in Dependable's subcontract with the project developer who previously settled with and assigned its contract rights to the Edwards Plaintiffs.

Given the position the carriers have taken and communicated, and given the absence of any response to Mr. Oliva's June 12, 2007 correspondence, we assume that no carrier will have or communicate any objection concerning Dependable's settlement with Plaintiffs. Specifically, no carrier shall assert a breach of the cooperation clause or voluntary payment defense as a result of Dependable's action. Dependable's decision to enter into this settlement was not voluntary, but rather dictated by the carriers' position regarding the amount of indemnification to be provided to the insured.

Dependable's position is that each carrier has waived any coverage defense regarding the cooperation clause(s) in its policies, as well as any voluntary payment defense related to Dependable being forced to settle this matter with its own financial resources. Further, Dependable fully reserves any and all rights against each and every carrier based on law or equity, including, but not limited to, any claims arising from the failure to defend or indemnify (breach of duty to defend, breach of duty to

indemnify, breach of the implied covenant of good faith and fair dealing – duty to defend and/or indemnify); *Brandt* fees incurred by Dependable in the securing of liability coverage unreasonably withheld; extra contractual liability, including punitive damages; and having to be forced to settle this matter utilizing its own financial resources. Additionally, Dependable reserves its rights related to appointed defense counsel's preparation and planning for trial.

**YOU ARE HEREBY NOTIFIED** that a hearing to record the settlement has been set for Tuesday, June 19, 2007 at 10:00 am, in Department 6 of the Contra Costa County Superior Court. In my capacity as Dependable's personal counsel, I will appear to represent and speak for Dependable at the hearing. As to any and all matters concerning this proposed settlement, assigned defense counsel – if they in fact attend – will not be expected to speak on behalf of Dependable.

We urge that you or other representatives of the carriers also attend this hearing. Having effectively abandoned Dependable, the insurers have arguably forfeited any right to object to this settlement. Nevertheless, please note that the amount of the proposed settlement ($20,000) is the same amount which was recommended as reasonable by defense counsel assigned by Ranger and was confirmed as reasonable by the expert witness retained by defense counsel. If, however, the carriers wish to object to Dependable entering into this settlement or to the reasonableness of the settlement amount, it is expected that they or their representatives will lodge their objections with the Court prior to the hearing and/or appear at the hearing on June 19, 2007.

Sincerely,

Jayne Loughry

cc:    Howard N. Wollitz, Esq, (via facsimile)
       George Yaron, Esq. (via facsimile)
       Joseph L. Oliva, Esq. (via facsimile)

EXHIBIT "D"

## PROMISSORY NOTE

For value received, in the form of a full settlement and release of all claims against Dependable Sheet Metal for allegations related to the lawsuit entitled *Edwards v. Suncrest Homes, et al.,* California Superior Court for the County of Contra Costa, Case No. C05-00387, Dependable Sheet Metal hereby promises to pay to the *Edwards* Plaintiffs the sum of Twenty Thousand Dollars ($20,000) ("the Settlement Sum").

Payment on this Note shall be due in 120 days from the date of execution of this Promissory Note. There shall be no interest charged on the Settlement Sum. The Settlement Sum shall be payable to Shinnick & Ryan LLP, Estates at Dallas Ranch Trust Account, Tax ID No. 33-0960710.

In making this Note, Dependable Sheet Metal expressly reserves any and all rights to seek payment of the entire Settlement Sum from certain of its insurance carriers, their agents, representatives, or affiliates. As to any amount of the Settlement Sum, whole or partial, which Dependable Sheet Metal itself pays on this Note, Dependable Sheet Metal expressly reserves any and all rights to seek reimbursement or recovery of such amount from certain of its insurance carriers, their agents, representative, or affiliates.

_____          _____
Vice-President, Dependant Sheet Metal              Date Executed

**EXHIBIT  D**

EXHIBIT "E"


RiverStone

8880 Rio San Diego Drive
Suite 510
San Diego, CA 92108
Telephone: (619) 260-8901
Facsimile: (619) 668-0051

June 20, 2007

Phil Heil
Dependable Sheet Metal, Inc.
1855 N. First Street, Suite A
Dixon, CA 95620

RE:     **Lorna Belskey, et al. v. The Presley Companies, et al.**
        Contra Costa County Superior Court, Case No. C05-00837
        Insured:      Dependable Sheet Metal, Inc.
        Claim No.:    0000022925
        Claimant:     Belskey, Lorna
        TIG Policy No.:       035026957  (8/9/94 – 8/9/96)
        Ranger Policy No:   GLO067388000 (8/9/96 – 8/9/97)

Dear Mr. Heil:

This claim recently settled with contribution from TIG Insurance Company in the amount of $21,666.67 and with a contribution from Ranger Insurance Company in the amount of $18,333.33.

As you are aware, your TIG Insurance policy carries a $500.00 per claim deductible and your Ranger Insurance policy carries a $5,000.00 per claim deductible, which are both applicable to his settlement. Please submit your check for **$5,500.00** payable to **RiverStone Claims Management, LLC** at your earliest convenience so that we may close this claim file.

Please record RiverStone Claim number on the check.

Payment should be forwarded to:

        **RIVERSTONE CLAIMS MANAGEMENT, LLC**
        **250 COMMERCIAL STREET**
        **SUITE 5000**
        **MANCHESTER, NH  03101**

Thank you and please call with any questions.

Sincerely,

Nona Fabian
Claims Assistant
RiverStone Claims Management, LLC
on behalf of TIG Insurance & Ranger Insurance Company

EXHIBIT     E



