1    failure to resolve indemnity allocation disputes between themselves;

2        d.    Unreasonably, purposefully, and intentionally failing to resolve

3    indemnity allocation disputes in the manner required by California law and, by

4    such failure, putting their own financial interests ahead of their obligation to

5    protect Counter-Claimant from financial harm;

6        e.    Explicitly and/or implicitly asserting that Counter-Claimant was

7    obligated to fund the recalcitrant insurer's allocation share of settlement or

8    judgment;

9        f.    Adopting unreasonable and unwarranted interpretations and

10    applications of provisions and exclusions in the Policies to the detriment of

11    Counter-Claimant's interest;

12        g.    Unreasonably, purposefully and intentionally interpreting the

13    allegations and claims of the homeowner Counter-Claimant and claimants

14    inaccurately solely in an attempt to avoid coverage obligations owed to Counter-

15    Claimant;

16        h.    Causing the Counter-Claimant to sustain economic and financial

17    harm, including, but not limited to attorneys' fees and costs, by refusing to defend

18    the Counter-Claimant meaningfully and immediately;

19        i.    Refusing to timely, promptly and without delay, pay for the

20    reasonable and necessary defense costs incurred by Counter-Claimant from the

21    time of the tender through the present;

22        j.    Refusing to provide Counter-Claimant with any reasonable or

23    justifiable basis for the decision to deny and/or delay a full defense and for the

24    decision to deny and/or delay indemnifying Counter-Claimant;

25        k.    Embarking on a course of conduct and pattern and practice,

26    whereby RANGER, TRANSAMERICA, INSCORP, and ROES 1-100 would fail

27    and/or refuse to respond fully to tenders made by or on behalf of and/or to

28    acknowledge the indemnity obligations owed to Counter-Claimant;

1    i.    Continuing to pursue such course of conduct and pattern and

2    practice after publication of, and notwithstanding the law mandating an

3    immediate acceptance of the insurance coverage obligation; and,

4    j.    Pursuing such a course of conduct and pattern and practice in

5    violation of the terms of the policies and insurance law with the knowledge,

6    understanding, consent and approval of the respective managing officers,

7    directors, agents and employees of RANGER, TRANSAMERICA, INSCORP,

8    and ROES 1-100.

9    70.    The foregoing acts and omissions were unreasonable, malicious, fraudulent,

10    oppressive and despicable.

11    71.    The respective officers, directors and managing agents and employees of

12    RANGER, TRANSAMERICA, INSCORP, and ROES 1-100 participated in, authorized and/or

13    ratified the wrongful conduct of RANGER, TRANSAMERICA, INSCORP, and ROES 1-100

14    as alleged above causing direct economic harm to the Counter-Claimant.

15    72.    As a result of the bad faith conduct RANGER, TRANSAMERICA, INSCORP,

16    and ROES 1-100 in this matter, Counter-Claimant has incurred substantial attorneys' fees,

17    costs and expenses in defense, repair, loss adjustment, mitigation, investigation, settlement

18    and other costs and expenses in response to each of the UNDERLYING ACTIONS and have

19    been required to bring this Counter-Claim to enforce and incur attorney fees and costs in order

20    to secure coverage unreasonably withheld herein.  Counter-Claimant is therefore entitled to

21    recover as damages against RANGER, TRANSAMERICA, INSCORP, and ROES 1-100 all the

22    aforementioned attorney fees, costs and expenses which it has incurred as a result of each of

23    the UNDERLYING ACTIONS together with interest thereon, attorney fees incurred in the

24    securing of coverage unreasonably withheld and Counter-Claimant has suffered damages and

25    will continue to suffer damages within the jurisdiction of this Court, according to proof.

26    73.    Counter-Claimant is further entitled to recover as damages against RANGER,

27    TRANSAMERICA, INSCORP, and ROES 1-100 all fees, expenses and costs incurred by

28    Counter-Claimant in this action to enforce their rights under the insurance policies, plus

1  interest thereon, according to proof.

2      74.  The above described conduct of RANGER, TRANSAMERICA, INSCORP, and

3  ROES 1-100 has been and continues to be unreasonable, capricious and arbitrary, and

4  constitutes breach of the covenant of good faith and fair dealing contained in each and all of

5  the insurance policies referred to above in this Counter-Claim.  The above-described conduct

6  further constitutes malicious, oppressive and despicable conduct and conscious disregard of

7  Counter-Claimant's rights, and stems from improper and evil motives, including the desire of

8  RANGER, TRANSAMERICA, INSCORP, and ROES 1-100 to reduce or avoid their

9  obligations to Counter-Claimant, so as to justify an award of punitive and exemplary damages.

10  **FIFTH CAUSE OF ACTION**

11  **Reformation**

12  (Against INSCORP and ROES 1 – 100)

13      75.  Counter-Claimant repeats, re-alleges and incorporates by this reference each and

14  every allegation contained in all preceding paragraphs of this Counter-Claim as though set

15  forth at length herein.

16      76.  At all relevant times, Counter-Claimant intended to be provided comprehensive

17  commercial general liability coverage for claims of bodily injury and/or property damage

18  resulting from construction defects arising from the completed work performed by Counter-

19  Claimant, without limitation as to the date of manifestation, which in and of itself is an

20  ambiguous provision.  Coverage was to be subject to damage sustained during the effective

21  dates of the subject INSCORP Policies.  The parties mutually agreed that Counter-Claimant

22  would be provided such coverage under those policies.

23      77.  The entities that issued the policies providing the coverage referenced herein

24  had actual and/or ostensible authority to act on behalf of INSCORP and ROES 1 – 100 in

25  issuing these policies.

26      78.  To the extent that these policies issued by INSCORP and ROES 1 – 100, as

27  written, fail to include comprehensive commercial general liability coverage for claims of

28  bodily injury and/or property damage arising from the completed work performed by Counter-

1   Claimant under a full occurrence form without modification or restriction and not conditioned
2   on the date of manifestation of damage, the policies fail to accurately reflect the intent of the
3   parties. Specifically, all the INSCORP Policies should have included the same terms and
4   conditions as the INSCORP Policy delivered to Counter-Claimant, but INSCORP now asserts
5   the INSCORP Policies were materially modified to include a "Continuous and Progressive
6   Injury Limitation" Endorsement into the Policy which excluded any coverage to Counter-
7   Claimant for "*property damage*" that is "*first manifest prior to the effective date or after the*
8   *expiration of this policy* and which applies *even if the injury or damage continues or*
9   *deteriorates during the terms of the policy.* Further, said form was never disclosed by separate
10  admonishment prior to placement and was never identified at time of placement rendering the
11  form unenforceable.

12      79.    INSCORP and ROES 1 – 100's purported issue of policies which did not contain
13  the same terms and conditions as the INSCORP Policy delivered to Counter-Claimant was the
14  result of mistake or fraud. Counter-Claimant took all steps as reasonably necessary to assure
15  that the policies did provide Counter-Claimant with the coverage intended by the parties and
16  set forth herein. Such failure to issue the bargained for insurance coverage therefore resulted
17  from unilateral or mutual mistake or based on fraud.

18      80.    INSCORP and ROES 1 – 100 have refused to correct the policies, and have,
19  instead, wrongfully and unreasonably denied coverage on each of the UNDERLYING
20  ACTIONS.  Said policies were to provide coverage for the completed work performed by
21  Counter-Claimant and to indemnify for damage sustained during the effective dates of the
22  policies without any coverage limitations concerning the date of manifestation of damage.
23  INSCORP and its agents have instead used the purported Continuous and Progressive Injury
24  Limitation" Endorsement to wrongfully deny coverage to Counter-Claimant.  Said policies
25  issued by INSCORP should be reformed in accordance with the original terms and conditions
26  of the INSCORP policy delivered to Counter-Claimant.

27      81.    Counter-Claimant has therefore been injured by the failure to be provided the
28  coverage set forth herein in that Counter-Claimant was and is being exposed to liability in each

1  of the UNDERLYING ACTIONS, and may in the future be exposed to liability in similar

2  actions, without adequate coverage as was intended and bargained for by the parties. Counter-

3  Claimant's damages have yet to be ascertained but will be determined at trial according to proof.

## SIXTH CAUSE OF ACTION

### Professional Negligence

(Against HDR, GREGORY CLAUSER and ROES 101 – 300)

7      82.    Counter-Claimant repeats, re-alleges and incorporates by this reference each and

8  every allegation contained in all preceding paragraphs of this complaint as though set forth at

9  length herein.

10      83.    Counter-Claimant retained HDR and GREGORY CLAUSER, GREGORY as its

11  brokers, and to act on behalf of Counter-Claimant with regard to the placement of liability

12  insurance. As such, HDR and GREGORY CLAUSER owed Counter-Claimant a duty to act

13  reasonably in the performance of such duties.

14      84.    Counter-Claimant is informed and believes and thereon alleges that at all

15  material times, HDR and GREGORY CLAUSER, and ROES 101 – 300 knew Counter-

16  Claimant required comprehensive commercial general liability coverage for claims of bodily

17  injury and/or property damage arising from the completed work performed by Counter-

18  Claimant without any coverage limitations or exclusions as to the manifestation date of

19  damages.

20      85.    Counter-Claimant is informed and believes and thereon alleges that HDR and

21  GREGORY CLAUSER, and ROES 101 – 300 agreed to obtain the necessary policies with the

22  scope of coverage required by Counter-Claimant and as set forth above, and in fact, HDR,

23  GREGORY CLAUSER, and ROES 101 – 300 delivered such documents evidencing that

24  policies had been issued to Counter-Claimant intending Counter-Claimant to rely on such

25  documents and believe that the policies provided comprehensive commercial general liability

26  coverage for claims of bodily injury and/or property damage resulting from construction

27  defects arising from the completed work performed by Counter-Claimant without any

28  limitation of coverage arising from a first date of manifestation of damage.

86.    At all material times, Counter-Claimant reasonably and detrimentally relied on the conduct of HDR, GREGORY CLAUSER, and ROES 101 – 300, including but not limited to the fact that the policies and related documents produced, issued, and delivered to Counter-Claimant provided Counter-Claimant with comprehensive commercial general liability coverage for claims of bodily injury and/or property damage arising from the completed work performed by Counter-Claimant without any coverage limitations or exclusions arising from a particular first date of manifestation of damage.

87.    At all material times, Counter-Claimant reasonably and detrimentally relied on the conduct of HDR, GREGORY CLAUSER, and ROES 101 – 300, including but not limited to the fact that they were expected to provide an adequate and accurate description of all material terms of the INSCORP Policies, and notwithstanding such obligation, neither HDR nor GREGORY CLAUSER notified, identified, nor explained any newly added limitation of coverage contained in the INSCORP Policies despite their obligation to do so. Thus, Counter-Claimant was under the belief that the INSCORP Policies provided coverage as broad if not broader than the INSCORP Policy numbered CAIC 10016984 00-00 delivered to Counter-Claimant. Further, because each of the subsequent INSCORP Policies were renewal policies, Counter-Claimant was under the belief that the Renewal Policies contained the identical terms and conditions as the first INSCORP Policy, unless otherwise disclosed prior to placement. Counter-Claimant was further informed by GREGORY CLAUSER and HDR that copies of the INSCORP Renewal Policies need not be delivered to Counter-Claimant because there were no material changes from the first INSCORP Policy, and at all material times, Counter-Claimant relied on those representations.

88.    Said negligence caused Counter-Claimant harm, as set forth herein.

89.    Counter-Claimant relied on the INSCORP Policy attached hereto as Exhibit "B". At no time did HDR, GREGORY CLAUSER, and ROES 101 – 300 advise that this or subsequent policies did not contain coverage as stated in the INSCORP Policy. Counter-Claimant would not have continued to do business with INSCORP, HDR, GREGORY

1 | CLAUSER, and ROES 101 – 300 otherwise, and instead would have obtained coverage
2 | without the purported first date of damage manifestation limitation.

3 |     90.    Counter-Claimant is informed that INSCORP and ROES 1 – 300 refused to
4 | acknowledge they have an obligation to provide Counter-Claimant with comprehensive
5 | commercial general liability coverage for claims of bodily injury and/or property damage
6 | arising from the completed work performed by Counter-Claimant without any coverage
7 | limitations or exclusions as to first date of manifestation of damage.

8 |     91.    HDR, GREGORY CLAUSER, and ROES 101 – 300 had either actual or
9 | ostensible authority to provide Counter-Claimant with the INSCORP Policies. As such, if
10 | INSCORP's position is correct, then HDR, GREGORY CLAUSER, and ROES 101-300 failed
11 | to provide Counter-Claimant with general liability coverage for claims of bodily injury and/or
12 | property damage resulting from construction defects performed by Counter-Claimant during
13 | the effective dates of the policies without any coverage limitations or exclusions, including the
14 | "Continuous and Progressive Injury Limitation," as to a first date of manifestation of damage.
15 | Furthermore, HDR and GREGORY CLAUSER had a duty to Counter-Claimant to disclose
16 | any ownership, agency or other financial relationship existing between HDR and GREGORY
17 | CLAUSER and INSCORP, but failed to make such disclosure notwithstanding such duty.

18 |     92.    Counter-Claimant's reliance upon the policies and related documents delivered
19 | by HDR, GREGORY CLAUSER, and ROES 101 – 300  whose expertise was relied upon,
20 | was reasonable in that it is within the normal custom and practice for entities holding
21 | themselves out as Brokers, such as HDR, GREGORY CLAUSER, and ROES 101 – 300 did,
22 | to issue and/or deliver such policies.

23 |     93.    Further, Counter-Claimant was not informed that INSCORP and ROES 101 –
24 | 300 would control the conduct or enter into a collusive relationship with HDR, GREGORY
25 | CLAUSER, and ROES 101 – 300 in a manner detrimental to Counter-Claimant,
26 | notwithstanding the role of HDR and GREGORY CLAUSER as broker for Counter-Claimant.
27 | ///
28 | ///

94.     Further, HDR subsequently acted as INSCORP's agent in investigating claims against Counter-Claimant and determining and delivering INSCORP's coverage position regarding such claims.

95.     To the extent that the policies placed by HDR, GREGORY CLAUSER, and ROES 151 – 300 do not afford Counter-Claimant with liability coverage for claims of bodily injury and/or property damage sustained during the effective dates of any of the INSCORP policies, then HDR and GREGORY CLAUSER fell below the standard of care by (1) placing such policy with such limitation; (2) failure to disclose such limitation prior to each such placement; (3) failure to disclose the ownership, business and financial relationship between HDR and INSCORP; (4) acted negligently and fell below the industry standard of care when issuing policies with a narrower scope of coverage required by Counter-Claimant; and (5) acted negligently and fell below the industry standard of care when acting as INSCORP's agent in the investigation and determination of claims coverage under insurance policies which they had brokered on behalf of Counter-Claimant.

96.     If the policies issued to Counter-Claimant by HDR, GREGORY CLAUSER, and ROES 151 – 300 do not afford Counter-Claimant with the coverage required by Counter-Claimant, the failure of HDR, GREGORY CLAUSER, and ROES 101 – 300 to issue policies with that scope of coverage was negligent in that such conduct fell below the standard of care owed to Counter-Claimant causing Counter-Claimant direct economic harm.

97.     If it is determined that any of the policies issued to Counter-Claimant by HDR, GREGORY CLAUSER, and ROES 101 – 300  are not valid and binding on INSCORP and ROES 1 – 100 respectively, then Counter-Claimant had insufficient coverage in each of the UNDERLYING ACTIONS as the result of the negligence of HDR, GREGORY CLAUSER, and ROES 101 – 300 in failing to issue policies which provided Counter-Claimant with comprehensive commercial general liability coverage for claims of bodily injury and/or property damage resulting from construction defects arising from the completed work performed by Counter-Claimant during the effective dates of the policies without the subject limitation.

98.    As a result of the negligence of HDR, GREGORY CLAUSER, and ROES 151 – 300, Counter-Claimant will sustain and has sustained damages in an amount to be proved at trial, and has been harmed and suffered damages in the form of legal fees and costs to investigate, defense fees and costs, and settlement/indemnity in the UNDERLYING ACTIONS and in the form of legal fees and costs incurred in this action.

99.    The above-described conduct further constitutes malicious, oppressive and despicable conduct and conscious disregard of Counter-Claimant's rights, and stems from improper and evil motives, including the desire of HDR, GREGORY CLAUSER, and ROES 101-300 to ignore their obligations to Counter-Claimant for the purpose of advancing their own and INSCORP's financial interests, so as to justify an award of punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION

### Negligent Misrepresentation

(Against HDR, GREG CLAUSER, and ROES 101 – 300)

100.    Counter-Claimant repeats, re-alleges and incorporates by this reference each and every allegation contained in all preceding paragraphs of this complaint as though set forth at length herein.

101.    Counter-Claimant retained HDR, GREGORY CLAUSER and ROES 101 – 300, HDR, GREGORY CLAUSER and ROES 101 – 300 TO act as broker on behalf of Counter-Claimant with regard to its liability needs and in such capacity these Counter-Defendants had a duty to act reasonably in the performance of such duties on behalf of Counter-Claimant.

102.    At all material times, HDR, GREGORY CLAUSER, and ROES 101 – 300 knew or should have known Counter-Claimant required comprehensive commercial general liability coverage for claims of bodily injury and/or property damage sustained during the effective dates of the policies, without condition, to the "date of manifestation".

103.    At all material times, HDR, GREGORY CLAUSER and ROES 101 – 300 represented to Counter-Claimant that the policies and policy documents produced, issued and delivered to Counter-Claimant by HDR, GREGORY CLAUSER and ROES 101 – 300

1  provided Counter-Claimant with comprehensive commercial general liability coverage for
2  claims of bodily injury and/or property damage resulting from the completed work performed
3  by Counter-Claimant where coverage would be triggered if damage or injury was sustained
4  during the effective dates of the policies.

5      104.  HDR, GREGORY CLAUSER, and ROES 101 – 300 further represented that
6  they had, for the benefit of Counter-Claimant, obtained policies which afforded Counter-
7  Claimant the scope of insurance required by Counter-Claimant and set forth herein.

8      105.  At all material times, the representations made by HDR, GREGORY
9  CLAUSER, and ROES 101 – 300 that the policies and policy documents issued to Counter-
10  Claimant by INSCORP, HDR, and ROES 101 – 300, provided Counter-Claimant with
11  comprehensive commercial general liability coverage for claims of bodily injury and/or
12  property damage occurring during the policy period under a full occurrence form and further
13  misrepresented that the renewal policies contained the same coverage provided in the initial
14  policy and further advised that the delivery of the full and complete renewal policies was
15  unnecessary.

16      106.  At all material times, HDR, GREGORY CLAUSER, and ROES 101 – 300, and
17  each of them, were without any reasonable grounds to believe the truth of the representations
18  made to Counter-Claimant upon placement of the INSCORP Policies.

19      107.  HDR, GREGORY CLAUSER and ROES 101 – 300 made these representations
20  to Counter-Claimant with the intent that Counter-Claimant would rely on the representations
21  in that HDR, GREGORY CLAUSER and ROES 101 – 300, and each of them, intended that
22  Counter-Claimant would believe the INSCORP Policies would have the same coverage as the
23  original policy placed by HDR, GREGORY CLAUSER and ROES 101 – 300 and delivered to
24  Counter-Claimant.

25      108.  At all material times, Counter-Claimant reasonably and detrimentally relied on
26  the representation of HDR, GREGORY CLAUSER and ROES 101 – 300, including but not
27  limited to the fact that the policies and related documents produced, issued and delivered to
28  Counter-Claimant provided Counter-Claimant with comprehensive commercial general

1    liability coverage for claims of bodily injury and/or property damage sustained during the

2    effective dates of the policy and further believed that each renewal policy had coverage as

3    broad as the original policy delivered to it.

4        109.    Counter-Claimant received and relied on the documentation received by HDR,

5    GREGORY CLAUSER, and ROES 101 – 300 and believed that such documents provided the

6    coverage required by Counter-Claimant.    Counter-Claimant would not have accepted any

7    policy with the purported limitations contained in each renewal policy had such been known

8    to Counter-Claimant.

9        110.    Counter-Claimant's reliance upon the documentation received from HDR,

10   GREGORY CLAUSER and ROES 101 – 300 was reasonable, given the role as to HDR,

11   GREGORY CLAUSER, and ROES 101 – 300, as broker, affording the referenced scope of

12   coverage required by Counter-Claimant.

13       111.    Further, Counter-Claimant was not informed by HDR, GREGORY CLAUSER

14   INSCORP, or ROES 101 – 300 of any restrictions of coverage.

15       112.    However, Counter-Claimant has been informed that INSCORP and ROES 1 –

16   100 refuse to acknowledge they have any obligation to provide Counter-Claimant with

17   comprehensive commercial general liability coverage for claims of bodily injury and/or

18   property damage occurring during the effective dates of the policies without any coverage

19   limitations or exclusions as to a first date of manifestation of damage.

20       113.    As a result of the negligent misrepresentation of HDR, GREGORY CLAUSER,

21   INSCORP, or ROES 101 – 300, Counter-Claimant has been harmed and has suffered damages

22   in the form of legal fees and costs to investigate, defend and settle each of the UNDERLYING

23   ACTIONS and in the form of legal fees and costs incurred in this action.

24                        **EIGHTH CAUSE OF ACTION**

25                              **Declaratory Relief**

26          (Against RANGER, TRANSAMERICA, INSCORP, HDR, GREGORY CLAUSER,

27                    INSCORP, ROES 1-100, and ROES 101 – 300)

28       114.    Counter-Claimant repeats, re-alleges and incorporates by this reference each and

1  every allegation contained in all preceding paragraphs of this complaint as though set forth at
2  length herein.

3      115.  As set forth above, RANGER, TRANSAMERICA, INSCORP, and ROES 1-100
4  among other things, agreed to investigate, adjust, defend and/or indemnify Counter-Claimant
5  as to any claims by the claimants in each of the UNDERLYING ACTIONS on account of
6  alleged bodily injury and/or property damage caused by an occurrence falling within and/or
7  potentially falling within the coverage defined in each policy.

8      116.  As set forth above, HDR, GREGORY CLAUSER, INSCORP, and ROES 101 –
9  300, owed a duty to Counter-Claimant to provide policies that afforded Counter-Claimant
10  with comprehensive commercial general liability coverage for claims of bodily injury and/or
11  property damage occurring during the effective date of the policy period and without any
12  coverage limitations or exclusions as to a manifestation date of damage.

13      117.  Defense fees and costs, including attorneys' fees and costs, experts' fees and
14  costs, settlement, repair, investigation, loss adjustment, costs and expenses have been incurred
15  by Counter-Claimant in each of the UNDERLYING ACTIONS, because of bodily injury
16  and/or property damage caused by an occurrence falling within and/or potentially falling
17  within the coverage of, and/or as defined in, each of the policies referred to hereinabove.

18      118.  Counter-Claimant provided notice of the claims asserted against them in each of
19  the UNDERLYING ACTIONS to RANGER, TRANSAMERICA, INSCORP, and ROES 1-
20  100.  Counter-Claimant provided notice of the claims asserted against them in each of the
21  UNDERLYING ACTIONS to RANGER, TRANSAMERICA, INSCORP, and ROES 1-100.
22  Counter-Claimant has performed each covenant and/or condition which must be performed in
23  order to obtain a defense under each and all of the policies referenced hereinabove, or has
24  been excused from so performing as a result of the breach by RANGER, TRANSAMERICA,
25  INSCORP, and ROES 1-100 of their respective insurance agreements, including refusals to
26  defend and/or indemnify Counter-Claimant among other matters.

27      119.  A dispute has arisen between Counter-Claimant and INSCORP, GREGORY
28  CLAUSER and HDR, in that Counter-Claimant contends that they were and are entitled to be

1  fully defended and indemnified in each of the UNDERLYING ACTIONS. Counter-

2  Defendants contend to the contrary. Specifically, Counter-Claimant contends as follows: (1)

3  INSCORP owed a full and complete defense to each of the Underlying Actions; (2) the

4  limitation of coverage was, in fact, not made part of the policies; (3) if such limitation of

5  coverage was made part of the policy, said limitation was ambiguous; (4) the limitation is

6  contrary to public policy; and (5) Counter-Claimant is entitled to be fully indemnified.

7      120. An actual controversy exists between Counter-Claimant and Counter-

8  Defendants TIG and RANGER in that Counter-Claimant contends that it is entitled to a full

9  defense in the Cohen Action and full indemnification in the Kaiser and Edwards Actions.

10      121. With respect to each of the contentions made by Counter-Claimant set forth in

11  this cause of action, Counter-Defendants contend to the contrary.

12      122. An actual controversy exists between Counter-Claimant and Counter-

13  Defendants regarding the duties of each Counter-Defendant to provide coverage for Counter-

14  Claimant and/or reimburse Counter-Claimant pursuant to the insurance policies as to the

15  claims asserted in each of the UNDERLYING ACTIONS against Counter-Claimant. A

16  declaratory judgment is necessary and appropriate to determine the rights and duties of the

17  parties.

18  **NINTH CAUSE OF ACTION**

19  **For Unlawful, Unfair, and Fraudulent Business Practices in Violation of Business and**

20  **Professions Code § 17200, et. seq.**

21  (Against INSCORP, HDR, and NOVAPRO and ROES 101-300)

22      123. Counter-Claimant repeats, re-alleges and incorporates by this reference each and

23  every allegation contained in all preceding paragraphs of this complaint as though set forth at

24  length herein.

25      124. Counter-Defendants and each of them engaged in the activities referenced above

26  as part of a systematic, methodical, and general practice of depriving insureds, such as

27  Counter-Claimant, of the policy benefits to which Counter-Claimant and other policy holders

28  would otherwise be entitled.

125.    If Counter-Defendants are not prevented from engaging in the above actions, they will continue to engage in such activities to the detriment of Counter-Claimant, policy holders, similarly situated Counter-Claimants, and the general public.

126.    Among other wrongful actions under Business and Professions Code section 17200, *et. seq.* Counter-Defendants have:

      a.  Counter-Defendants secretly included limitations of coverage without the knowledge of Counter-Claim;

      b.  Counter-Defendants held themselves out to Counter-Claimant and others as separate and independent entities, hiding the fact that they are affiliated by common ownership, facilities, and/or employees, and are engaged in a common scheme and purpose to deprive Counter-Claimant of the rights and benefits owed to it;

      c.  Breached a duty to diligently search for evidence which supports an insured's claim for coverage;

      d.  Breached a duty to provide a defense to an insured of all claims, both covered and uncovered, when there is a potential for coverage based upon the allegations and claims in question or based upon extrinsic information existing at a time of notice to the insurer or thereafter available;

      e.  Breached a duty to provide a fair and reasonable claims handling protocol;

      f.  Breached a duty to not knowingly use its discretionary authority under the policy to effectuate a settlement injurious to the insured's rights;

      g.  These Counter-Defendants have a pattern and practice of denying coverage to Counter-Claimant and similarly situated policy holders for construction defect claims based on the Continuous and Progressive Injury endorsements. These denials of coverage are improper because construction defect claims involve allegations of continuous and progressive property damage which span multiple years.    Nevertheless, these Counter-Defendants misled Counter-Claimant that this purported endorsement applies to each claim

1    wherein it can deny such claim under said endorsement when that

2    endorsement was not applicable or existing under the INSCORP Policies;

3    and

4    h. These Counter-Defendants have a pattern and practice wherein they assign

5    all construction defect claims to the last INSCORP Policy year to wrongfully

6    avoid its obligations under the other INSCORP Policies, such obligations

7    including but not necessarily limited to charging a lower per claim

8    deductible.

9    127. Counter-Claimant is informed and believes that NOVAPRO is not, as it holds

10   itself out to be, a completely independent third-party claims adjustor. In multiple instances of

11   correspondence to Counter-Claimant, NOVAPRO identifies its office location as being in

12   Sacramento, California; however, according to its website and other public information,

13   NOVAPRO does not have an office in Sacramento, California. HDR does have an office in

14   Sacramento, California. Further, the claims department Sacramento telephone number

15   identified on NOVAPRO's correspondence to Counter-Claimant is the same telephone number

16   as the HDR website lists for its Sacramento claims department. Further, the NOVAPRO

17   email address of at least one of its employees is an alias address which is redirected to an

18   HDR email address. Further, Ms. Karen Meltvedt-Brown has represented herself to be Vice-

19   President of NOVAPRO's Claims Department; however, Counter-Claimant is informed and

20   believes that Ms. Meltvedt-Brown also is Vice-President of HDR's Claims Department.

21   128. Counter-Claimant is informed and believes that HDR, and later NOVAPRO,

22   was authorized by INSCORP to process, investigate and determine coverage as to third-party

23   claims made against and tendered by Counter-Claimant under the INSCORP Policies. In

24   carrying out these claims handling duties, HDR AND NOVAPRO engaged in a pattern and

25   practice wherein it assigned claims involving construction defect lawsuits all to the same

26   erroneous loss date of November 1, 2001, so as to place the construction defect claims within,

27   and charge Counter-Claimant a total $6,000 per occurrence deductible rather than the $500 per

28   occurrence deductible under earlier INSCORP policies. Attached to the Counter-Claim as

1    **Exhibit "C"** is a true and correct copy of the March 9, 2007, claim activity report received

2    from NOVAPRO.  Counter-Claimant is informed and believes that this claims activity report

3    was created by HDR on or about March 9, 2007.  This report shows that the forty-four (44)

4    completed operations liability claims made against and tendered by Counter-Claimant since

5    expiration of the last INSCORP policy in December 2001 were all assigned the exact same

6    loss date of November 1, 2001, causing Counter-Claimant to be charged higher deductibles

7    than would be charged under earlier INSCORP policies.  Counter-Claimant is informed and

8    believes that through this, and other wrongful practices, it was misled and/or forced to pay

9    excessive deductibles totaling at least $45,000, thereby causing it direct financial harm.  As a

10   result of the conduct of HDR and NOVAPRO, Counter-Claimant incurred damages in excess

11   of the minimal jurisdiction of this court and in an amount to be proven at trial.  Moreover, by

12   placing all claims on the last policy issued, the triggering of the earlier policies was avoided,

13   thereby depriving the insured of millions of dollars of potential coverage.    HDR and

14   NOVAPRO performed such acts for compensation from and/or for the financial benefit of

15   INSCORP.

16          129.    In addition, since the expiration of the last policy on December 2001, Counter-

17   Claimant has tendered to these Counter-Defendants forty-four (44) separate construction

18   defect claims described, on Exhibit C hereto, as "completed operations liability."  One or

19   more of these Counter-Defendants assigned each and every one of theses forty-four cases to a

20   2001 loss date even though each was a separate and distinct claim.  Notwithstanding that

21   INSCORP had sold Counter-Claimant four annual policies over four successive years, these

22   Counter-Defendants have consistently based all coverage investigations and determinations

23   solely on the last policy period deliberately and intentionally to advance their financial

24   interests without regard for the rights of and obligations owed to Counter-Claimant.

25          130.    Further, Exhibit C hereto also shows that these Counter-Defendants have opened

26   and closed numerous third-party claims against Counter-Claimant on the very same date,

27   evidencing that these Counter-Defendants spent no more than a single day to investigate the

28   claims and determine and deny coverage.  Moreover, on several occasions, these Counter-

1  Defendants have sent Counter-Claimant denials of coverage as to third-party claims which

2  Counter-Claimant had not tendered and, in fact, was not even aware had been made.  When

3  Counter-Claimant subsequently did receive or become aware of these third-party claims, and

4  properly tendered them, these Counter-Defendants did not undertake any investigation or

5  predetermination, but instead only sent Counter-Claimant a brief form-like letter referring

6  Counter-Claimant to the denial letters which had been sent before the claims had been made.

7       131.    Pursuant to the Business and Professions Code section 17203, this court is

8  authorized to enjoin violation and to enforce Counter-Defendants' duties as specified in the

9  proceeding paragraph.  As Counter-Claimant's remedies at law are inadequate, a permanent

10  injunction is necessary to prevent Counter-Defendants from engaging in the complained of

11  activities in this instance and in the future.  Counter-Claimant is entitled to, among other items

12  of damages, an enforcement order directing INSCORP, HDR, AND NOVAPRO to fund the

13  Counter-Claimant's defense, indemnify the Counter-Claimant, and disgorgement of profits as

14  a result of Counter-Defendants' conduct, as well as attorney's fees.

15       WHEREFORE, Counter-Claimant prays for judgment as follows

16            **ON THE FIRST AND SECOND CAUSES OF ACTION**

17       1.    For compensatory damages according to proof, but in an amount within the

18  jurisdiction of this Court;

19       2.    For attorney's fees and costs, according to proof;

20            **ON THE THIRD, FOURTH, AND NINTH CAUSES OF ACTION**

21       1.    For compensatory damages according to proof, but in an amount within the

22  jurisdiction of this Court;

23       2.    For attorney's fees and costs of suit in obtaining the benefits owed under the

24  respective policies, pursuant to *Brandt v. Superior Court,* 37 Cal.3d 813 (1985), according to

25  proof;

26       3.    For injunctive relief regarding duty to defend and indemnify;

27

28

4.    For an enforcement order to Counter-Defendants RANGER, INSCORP, and TRANSAMERICA to fund the defense and indemnification in the UNDERLYING ACTIONS;

5.    For punitive and exemplary damages according to proof;

### ON THE FIFTH CAUSE OF ACTION

1.    For an order reforming the subject insurance policies to Counter-Claimant with comprehensive commercial general liability coverage for claims of bodily injury and/or property damage resulting from construction defects arising from the completed work performed by Counter-Claimant during the effective dates of the policies without any coverage limitations or exclusions as to continuous and/or progressive bodily injury and/or property damage as required by Counter-Claimant and as intended by the parties;

### ON THE SIXTH AND SEVENTH CAUSES OF ACTION

1.    For compensatory damages according to proof, but in an amount within the jurisdiction of this Court;

2.    For attorney's fees and costs, according to proof;

3.    For punitive and exemplary damages according to proof;

### ON THE EIGHTH CAUSE OF ACTION

1.    For a declaratory judgment that each Counter-Defendant Insurer must defend and indemnify Counter-Claimant as to the claims asserted in each of the UNDERLYING ACTIONS and that each Counter-Defendant Insurer is obligated to provide a full and complete defense to Counter-Claimant and to fully indemnify Counter-Claimant for any settlement, award or judgment in each of the UNDERLYING ACTIONS;

2.    For a declaratory judgment that each Counter-Defendant must reimburse Counter-Claimant for the legal fees and costs incurred in this action;

### ON THE NINTH CAUSE OF ACTION

1.    For such monetary damages as are provided for under Business and Professions Code § 17200;

1      2.      For a permanent injunction against INSCORP, HDR, and NOVAPRO from

2 engaging in the complained of activities in this or future instances;

3      3.      For an enforcement order directing INSCORP, HDR, and NOVAPRO to fund

4 defense and indemnity of the UNDERLYING ACTIONS;

5      4.      For compensatory damages according to proof;

6      5.      For attorney's fees and costs according to proof;

7      6.      For punitive and exemplary damages according to proof.

8 **ON ALL CAUSES OF ACTION**

9      1.      For costs of suit herein; and

10      2.      For all such other and further relief as the Court may deem just and proper.

11

12 DATED: _____             OLIVA & ASSOCIATES, ALC

13

14                    By:    _____

15                          Joseph L. Oliva, Esq.
Attorney for Defendant/Counter-Claimant,
DEPENDABLE SHEET METAL

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "I"

# California Business Portal

**Secretary of State DEBRA BOWEN**

**DISCLAIMER:** The information displayed here is current as of JUL 20, 2007 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| DEPENDABLE SHEET METAL | | |
| **Number:** C0610137 | **Date Filed:** 10/26/1970 | **Status:** active |
| **Jurisdiction:** California | | |
| **Address** | | |
| 1855 N FIRST ST STE A | | |
| DIXON, CA 95620 | | |
| **Agent for Service of Process** | | |
| BRAD HANSEM | | |
| 1855 N FIRST ST STE A | | |
| DIXON, CA 95620 | | |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

EXHIBIT ___I___

# EXHIBIT "J"

# California Business Portal

Secretary of State DEBRA BOWEN

**DISCLAIMER:** The information displayed here is current as of Jul 13, 2007 and is updated weekly. It is not a complete or certified record of the Limited Partnership or Limited Liability Company.

| LP/LLC | | |
| --- | --- | --- |
| HDR INSURANCE MANAGERS, LLC | | |
| **Number:** 199708710013 | **Date Filed:** 3/28/1997 | **Status:** active |
| **Jurisdiction:** CALIFORNIA | | |
| **Address** | | |
| 455 UNIVERSITY AVE. STE.100 | | |
| SACRAMENTO, CA 95825 | | |
| **Agent for Service of Process** | | |
| DAVID O DANIELS | | |
| 455 UNIVERSITY AVENUE, STE. 100 | | |
| SACRAMENTO, CA 95825 | | |

Blank fields indicate the information is not contained in the computer file.

If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report. Fees and instructions for ordering a status report are included on the Business Entities Records Order Form.

EXHIBIT ___J___