IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAIRMONT SPECIALTY INSURANCE COMPANY AND TIG INSURANCE COMPANY<br><br>         Plaintiffs,<br><br>    V<br><br>INSURANCE CORPORATION OF NEW YORK, DEPENDABLE SHEET METAL, AND DOES 1-10.<br><br>         Defendants.<br>_____/ | No   C  07-3421  VRW<br><br>ORDER |

         Fairmont Specialty Insurance Company and TIG Insurance Company ("plaintiff insurers") filed a complaint in Contra Costa superior court against Insurance Corporation of New York ("Inscorp") and Dependable Sheet Metal Corporation ("Dependable"). The complaint seeks declaratory relief and equitable contribution arising out of a number of construction defect lawsuits in which Dependable sought liability coverage from plaintiff insurers and from Inscorp.  Inscorp filed a notice of removal with this court

claiming that Dependable was fraudulently joined.  Doc #1. Dependable moves to remand.  Doc #9.  For reasons discussed below, Dependable's motion is GRANTED.

I

Dependable is a sheet metal and heating and air ventilation subcontractor based in Dixon, California.  Doc #8-2 (Loughry Dec) ¶2.  For the last twenty years, Dependable has worked exclusively on residential housing projects in Contra Costa County and other northern California counties.  Id.  Dependable has been a party in numerous construction defect lawsuits.  Id.

Dependable annually purchased liability insurance policies to protect itself against such claims.  Id ¶3.  Dependable bought these policies from, among others, plaintiff TIG Insurance Company, plaintiff Fairmont Specialty Insurance Company (previously known as Ranger Insurance Company) and defendant Inscorp.  Id. Between August 9, 1993 and December 1, 2001, all of Dependable's commercial liability insurance was provided continuously by these three insurers.  Id.  Because of California's ten-year statute of limitations for residential construction defect claims, Cal CCP § 337.15, the policies issued by these three insurers have been and will continue to be Dependable's primary protection against construction defect claims.  Id.

The California Supreme Court has adopted the continuing loss doctrine, under which all carriers "on risk" from the date an insured completes its construction work have an obligation to defend unless the policy states otherwise.  See <u>Montrose Chemical Company v Admiral Ins Co</u>, 10 Cal 4th 645 (1995).  Accordingly, an

2

insurer has a duty to defend as long as an injury or damage potentially could have occurred during its policy period. Id. Any carrier "on risk" under the continuing loss doctrine can be targeted to fund the entire defense and indemnify the insured up to policy limits. <u>Aerojet-General Corp v Transport Indemnity Company</u>, 17 Cal 4th 38 (1997). A targeted carrier can then file suit against all other carriers or contributors. Id.

Over the years, when Dependable became aware of a claim or potential claim, it tendered the claim to all insurers, including TIG, Fairmont and Inscorp. Doc #8-2 ¶4. For several years, these insurers routinely accepted tender and provided defense and indemnity to Dependable. Id. Dependable had no knowledge of how the insurers were allocating responsibility among themselves. Id. Within the past two years, Inscorp began routinely denying that it has any coverage obligations regarding lawsuits tendered by Dependable. Id ¶5.

Plaintiff insurers filed the current action in Contra Costa superior court on May 29, 2007, seeking an adjudication of their rights against Dependable and Inscorp. Doc #1, Ex 1. Plaintiff insurers allege that they are defending or have defended Dependable in at least twelve construction defect lawsuits with little or no assistance from Inscorp. Id. Plaintiff insurers allege that Inscorp has consistently refused to participate in Dependable's defense and has refused to indemnify Dependable based upon an erroneous application of an exclusion in the Inscorp policy. Id. Plaintiff insurers state two causes of action. Id. The first is for declaratory relief against both Inscorp and Dependable and pleads:

> An actual controversy has arisen and now exists between Plaintiffs, on the one hand, and Defendants, on the other hand, concerning their respective rights and obligations in the *Dependable* actions, including those under the Dependable policies. Plaintiffs allege that Inscorp had and has a duty to indemnify Dependable against the *Dependable* actions under one or more of the general liability insurance policies * * *.

Id ¶19. The second cause of action is for equitable contribution against Inscorp and pleads:

> If Plaintiffs provided a defense and/or indemnification for Dependable under any of the *Dependable* actions, Plaintiffs are entitled to equitable contribution from Inscorp in an amount to be proved at trial.

Id ¶21.

Inscorp removed the action to this court on June 29, 2007 on the basis of diversity of citizenship alleging that plaintiff insurers fraudulently joined Dependable to destroy diversity jurisdiction. Doc #1. Plaintiff Fairmont Insurance Company is a citizen of both Delaware and Texas. Id. Plaintiff TIG Insurance Company is a citizen of both California and New Hampshire. Id. Defendant Inscorp is a citizen of both New York and Connecticut. Id. Defendant Dependable is a citizen of California. Doc #8-2; Doc 38-4, Ex I.

Before Inscorp removed the action, Dependable was prepared to file an answer and counterclaim. Doc #9 at 12; Doc #8-4, Exs G-H. Dependable's proposed counterclaim names Inscorp, Fairmont, TIG and others. Id. Unable to file its counterclaim, Dependable filed the instant motion to remand, challenging Inscorp's removal.

\\
\\
\\

4

**II**

An action may be removed to federal court if it could have been brought there originally. 28 USC § 1441. In order to establish diversity jurisdiction, the removing defendant must demonstrate that: (1) all plaintiffs are of different citizenship from all defendants and (2) the amount in controversy, exclusive of interest and costs, exceeds the current jurisdictional minimum of $75,000. See 28 USC § 1332(a); see also Singer v State Farm Mut Auto Ins Co, 116 F3d 373, 376 (9th Cir 1997).

The party opposing a motion to remand has the burden to demonstrate the existence of federal jurisdiction. See Emrich v Touche Ross & Co, 846 F2d 1190, 1195 (9th Cir 1988). Because the removal statute, 28 USC § 1441, is strictly construed against removal, any doubt regarding the propriety of removal must be resolved in favor of remand. See Plute v Roadway Package System, Inc, 141 F Supp 2d 1005, 1007 (ND Cal 2001) (citing Boggs v Lewis, 863 F2d 662, 663 (9th Cir 1988)).

"A district court may disregard a non-diverse party named in the state court complaint and retain federal jurisdiction if the non-diverse party is joined as a sham or if the joinder is fraudulent." Plute, 141 F Supp 2d at 1007. "There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." Id, citing Nishimoto v Federman-Bachrach & Assocs, 903 F2d 709, 712 n3 (9th Cir 1990); Emrich v Touche Ross & Co, 846 F2d 1190, 1195 (9th Cir 1988). "[T]he defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in state court against the

5

alleged sham defendant." Good v Prudential Ins Co of America, 5 F Supp 2d 804, 807 (ND Cal 1998).

"In deciding whether a cause of action is stated we have declared that we will look only to a plaintiff's pleadings to determine removability. * * * [But w]here fraudulent joinder is an issue, we will go somewhat further. The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." Ritchey v Upjohn Drug Co, 139 F3d 1313, 1318 (9th Cir 1998) (internal quotation marks and citations omitted). The posture of an opposition to a motion for remand based on a fraudulent joinder theory is thus similar to the posture on a motion for summary judgment. See Morris v Princess Cruises, Inc, 236 F3d 1061, 1068 (9th Cir 2001). A defendant may demonstrate fraudulent joinder factually, because if it would be appropriate to grant summary judgment on the sham defendant's claim, then the removing defendant has demonstrated that "the individuals joined in the action cannot be liable on any theory." Ritchey, 139 F3d at 1318. Disputed questions of fact and ambiguities in the controlling law must be resolved in favor of the party seeking remand. See Gaus v Miles, Inc, 980 F2d 564, 566 (9th Cir 1992).

### III

Inscorp argues that complete diversity exists and removal is therefore proper because (1) plaintiff insurers fail to state a cause of action against Dependable, and (2) Dependable's interests are aligned with plaintiff insurers, warranting realignment for jurisdictional purposes. Doc ##1, 11. The court disagrees on both points.

**A**

First, the court cannot conclusively find that Dependable is a sham defendant under the pleadings. As discussed below, Dependable establishes an actual case or controversy between itself and plaintiff insurers. Moreover, Dependable establishes that, under California law, it is an indispensable party to the action.

**1**

Dependable identifies a number of unresolved disputes between itself and plaintiff insurers, many of them involving the same issues that serve as the basis for plaintiffs' claims against Inscorp. Specifically, Dependable points to two of the aforementioned underlying construction defect lawsuits, wherein Dependable had to fund its own settlement.

First, Dependable points to <u>Gary Kaiser, et al v KB Homes, et al</u>, Contra Costa County superior court case number 05-00991, wherein Dependable was the only remaining defendant after all other defendants and cross-defendant had settled. Doc #8-2 ¶10. Dependable represents that "[a]fter much negotiation, Plaintiffs had reduced their settlement demand against Dependable to slightly less than $50,000, an amount which defense counsel, assigned by [the claims adjustor], recommended as reasonable." Id. Nevertheless, according to Dependable, Fairmont, TIG and Inscorp all refused to contribute amounts sufficient to fund the settlement. Id. TIG and Fairmont refused to pay more than 14 percent of any settlement amount, asserting that – based on their "time on risk" analysis – the remaining 86 percent should be paid by Inscorp. Id. Dependable represents that it was forced to pay the full settlement amount. Id. At the hearing in which the

7

settlement was recorded, Dependable made clear that it was agreeing to settle solely to avoid the risk of trial and that it was not waiving any rights against its insurers. Id.

Dependable was placed in the same situation not more than two months later in Charles Edwards, et al v Suncrest Homes, et al, Contra Costa County superior court case number 05-00387. Id ¶13. Again, all other parties had settled, and plaintiffs lowered their settlement demand to $20,000, which defense counsel for Dependable deemed reasonable. Id. Nevertheless, Fairmont, TIG and Inscorp again refused to pay amounts sufficient to fund the settlement. Id. Inscorp refused to offer any funds, and Fairmont and TIG refused to pay more than $150.00. Dependable paid the settlement amount itself, again making clear that it was not making a voluntary payment and was not waiving any rights against its insurers for their failure to settle the lawsuit. Id ¶15. Dependable seeks reimbursement of its out-of-pocket expenses incurred in defending and settling these cases. Doc #9 at 7.

Finally, Dependable states that it has reason to believe that Fairmont and TIG charged Dependable excessive deductible payments, relating to the aforementioned underlying construction defect lawsuits. Doc #8-2 at ¶¶18-19. Dependable intends to seek recovery of all amounts improperly charged by and paid to plaintiff insurers. Id.

Dependable takes the position that Fairmont and TIG's conduct in the above actions violated California's continuing loss doctrine and that Fairmont and TIG otherwise failed to honor their contractual and legal obligations. Id ¶17; Doc #9 at 9. Dependable argues that plaintiffs acted in bad faith by forcing a

8

policyholder to pay the settlement share of a recalcitrant insurer. Doc #8-2 ¶¶8-9. The court finds, based on the above, that Dependable has established a bona fide conflict between plaintiff insurers and Dependable itself.

Inscorp does not dispute that plaintiff insurers and Dependable have viable claims against each other. Rather, Inscorp argues that the complaint fails to state a cause of action against Dependable because the declaration sought is solely against Inscorp. Doc #11 at 3-5. Inscorp argues that "[a]lthough Dependable is named as a defendant in the First Cause of Action, the only relief sought is a declaration that Inscorp has a duty to defend and/or indemnify Dependable." Doc #11 at 3-4. But as discussed below, Dependable is an indispensable party to this claim as the declaratory relief sought would bind Dependable, impeding it from protecting its interests. Moreover "doubt arising from merely inartful, ambiguous, or technically defective pleadings should be resolved in favor of remand." Lewis v Time, Inc, 83 FRD 455, 460 (ED Cal 1979). Assuming Inscorp has identified a real defect in the complaint, the court cannot say that a California court would invalidate the claim against Dependable. To the contrary, amendment would likely be allowed. "If it is reasonably possible that plaintiff can cure a defective complaint by amendment, or that the pleading liberally construed can state a cause of action, the trial court should not sustain a demurrer without leave to amend." Heckendorn v City of San Marino, 42 Cal 3d 481, 486 (1986) (citing Minsky v City of Los Angeles, 11 Cal 3d 113, 118 (1974)).

\\

**9**

Additionally, plaintiff insurers have filed a response to Dependable's motion, stating that they do not oppose remand and clarifying the issues in the case. Doc #12. Plaintiff insurers, like Dependable, show ripe controversies between themselves and Dependable. Plaintiff insurers state that "it is Inscorp's refusal to settle the cases against Dependable that precipitates the controversy between Plaintiffs and Dependable." Doc #12 at 5. At a minimum, the contents of plaintiffs' statement suggest that amendment of its state court complaint to assert a clearer claim against Dependable would not be futile.

Finally, the posture of this case is unique in that a defendant, and specifically the alleged "sham defendant," is the party moving to remand. In the typical case, a plaintiff moves to remand insisting that he or she has a viable cause of action against the party alleged to be fraudulently joined. And in the typical case, the alleged "sham defendant" sides with the removing party or remains silent in the hopes of disappearing from the case. Here the court is hard-pressed to dismiss a cause of action against a defendant that welcomes the suit and actively requests inclusion.

2

Second, as Dependable points out, Dependable is an indispensable party to the litigation under California law. Cal CCP § 389 states:

> (a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may

10

> **(i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.**
>
> **(b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder.**

**Cal CCP § 389(a)-(b).**

Dependable identifies, and the court is persuaded by, multiple bases on which Dependable would be deemed an indispensable party to the action by a California court. Doc #16 at 6-8, 10-12. First, Dependable has an interest in generating defense strategies in the underlying lawsuits that would protect its corporate assets in light of its understanding of its potential liability exposures, which may or may not be consistent with each carrier's position. Having all the parties litigate the allocation issues in one proceeding negates the "risk of incurring double, multiple, or otherwise inconsistent obligations," a concern addressed by Cal CCP § 389.

In a related vein, as Dependable points out, if Fairmont, TIG and/or Inscorp establish an absence of any duty to defend or indemnify, Dependable would be required to fund its own defense or satisfy its own indemnity obligations and may be subject to claims

11

of reimbursement by Fairmont and TIG.  See <u>Buss v Superior Court</u>, 16 Cal 4th 35, 50-51 (1997) (carrier may seek reimbursement for defense dollars or settlement funds paid by carrier in absence of any potential coverage).  Accordingly, Dependable has an interest in being heard on its interpretation of the various policy terms.

Moreover, any determination as to the respective duties of the carriers may have a preclusive effect on Dependable's ability to assert a coverage position in other litigation regarding the same policies.  See e g <u>Walsh Const Co of Illinois v National Union Fire Ins Co</u>, 153 F3d 830, 832-33 (7th Cir 1998); <u>Fuchsberg & Fuchsberg v Galizia</u>, 300 F3d 105 (2d Cir 2002).  This is of particular consequence given that Dependable is involved in several pending construction defect actions involving the same carriers.

Further as Dependable points out, California's continuing loss doctrine provides that it is the insured, not the insurer, that dictates which carrier is to fund the defense and/or settlement as long as such action does not interfere with the carrier's right of contribution.  <u>Aerojet-General Corp v Transport Indemnity Company</u>, 17 Cal 4th 38, 58 (1997); <u>FMC Corp v Plaisted and Companies</u>, 61 Cal App 4th 1132, 1190 (1998).  Accordingly, the decision as to which policies were obligated to respond to the underlying complaints may rest initially with Dependable, not with Fairmont or TIG.  Here, Dependable asserts an interest in having the earliest policies exhausted first so as to preserve the aggregates of its later policies for future claims.  Doc #16 at 13-14.

\\

3

Based on the above discussion, the court cannot find that California law prevents plaintiff insurers from stating a claim against Dependable. Indeed it appears that plaintiff insurers were required to include Dependable in their declaratory relief action. Any determination a court might make as to the coverage obligations owed by any insurer will directly affect the coverage obligations of the other insurers, thereby impacting Dependable.

B

For substantially the same reasons, the court disagrees with Inscorp's argument that the parties are misaligned. "If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes." Dolch v United California Bank, 702 F2d 178, 181 (9th Cir 1983). Here, Dependable and plaintiffs have identified a number of issues on which they are adverse, most of which relate to the primary matter in dispute. Plaintiffs have avowed their desire to pursue claims against Dependable, and vice-versa. Indeed, as mentioned above, Dependable has prepared a counterclaim against plaintiff insurers and others. Doc #8-4, Ex H.

Inscorp's realignment argument essentially boils down to the one that because Fairmont and TIG seek indemnity on behalf of Dependable, their interests are aligned with Dependable's. But Dependable, as the insured, seeks indemnity from all three insurers. Accordingly, the only sensible realignment would require the court to re-position Dependable as the plaintiff on one side of

13

the case against all three insurers on the other side. But this too would destroy diversity because, as stated above, both TIG and Dependable have California citizenship.

Inscorp cites <u>New York State Insurance Fund v United States Liability Insurance Co</u>, 2004 US Dist LEXIS 3124 (SDNY) in support of realignment. Like this case, <u>New York State Insurance Fund</u> was a suit brought by an insurer seeking a declaration that another insurer was obligated to indemnify their mutual insureds. The complaint for declaratory relief also named as defendants the two insureds, who were non-diverse. The Southern District of New York, in denying a motion to remand, found that the insureds should be realigned as plaintiffs because the plaintiff insurer was specifically seeking coverage for them. Id at 5-6. Unlike Dependable, however, the insureds in <u>New York State Insurance Fund</u> had not funded their own defenses or settlements. Rather, the plaintiff insurer had paid the full amount of judgment against the insureds and was seeking reimbursement. Also in contrast to this case, the Southern District of New York found that the insureds likely lacked any interest in the case at all, noting that both were listed as inactive companies and that they had defaulted in answering the complaint. Here, as discussed above, Dependable is an operating company that: (1) has funded its own settlements under protest, (2) is prepared to file an answer and counterclaim, (3) actively invites inclusion in the case and (4) seeks to have adjudicated ripe disputes pending between itself and plaintiff insurers. Accordingly, the court declines to apply the holding of <u>New York State Insurance Fund</u> to the case at bar.

**14**

Moreover, as Dependable points out, Dependable may even take a position in support of Inscorp that the entire duty to defend and indemnify rested with Fairmont and TIG, depending on the facts uncovered in the course of the litigation. Doc #16 at 13. And as discussed above, Dependable seeks a preservation of the remaining aggregate limits under the Inscorp policies, which were issued after the Fairmont and TIG policies. Id at 14; Doc #12 at 3. In sum, Inscorp has failed to establish conclusively that the parties must be realigned or that a <u>proper</u> realignment would resolve the jurisdictional issue.

IV

Based on the above considerations, the court cannot find that plaintiff insurers' claim against Dependable is barred by well-settled rules of existing state law. As a result, this matter must be remanded to state court, as complete diversity of citizenship is lacking.

In sum, Dependable's motion to remand (Doc #9) is GRANTED. Inscorp's request to strike plaintiff insurers' statement of non-opposition is DENIED.

The court ORDERS this matter to be remanded to Contra Costa superior court. The clerk is DIRECTED to close the file and terminate all pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge

15

16